JEREMIAH BULGER, Respondent *v.* ISAAC A. ROSA, as Sheriff,. etc., Appellant.

In a case triable by a jury, the direction of a verdict is only justified where the evidence conclusively establishes the right of the party in whose favor it is made. The test of the right is, whether the court would be bound to set a verdict aside as against evidence if rendered against the party in whose favor it was directed.

*It seems,* the provision of the statute relating to fraudulent transfers and conveyances (2 R. S. 137, § 4), which declares that the question of fraudulent intent arising thereunder shall be deemed a question of fact and not of law, does not interfere with the prerogative of the court to direct a verdict, although the case arises under the statute, provided the fraudulent intent is conclusively established on the face of the instrument of transfer or by the uncontradicted evidence.

*It seems,* also, an insolvent firm may not apply the firm assets in payment of the individual debts of the partners, nor can the equity of the firm creditors be defeated by a transfer by one of two copartners, of his interest therein, to the other; they still, as to firm creditors remain firm assets.

*It seems,* also, where an individual creditor of one of the members of a firm knowingly takes a transfer of firm property in payment of his individual debt, his act is not merely a violation of an equitable right of a firm creditor, but it constitutes a fraud.

A firm, although insolvent, has a right, however, to make preferences; among its creditors, and one partner may transfer the partnership effects. directly to a firm creditor in payment of his debt without the knowledge or consent of his copartner.

Where S. one of two copartners in a firm which to their knowledge was insolvent, as were also the individual members, assigned and transferred his interest in the partnership assets to B. his copartner, subject to the firm's debts, with the knowledge that the latter intended to transfer them to a firm and individual creditor, which transfer was made in payment of all the creditor's claims, and where in an action of replevin against a sheriff, who had levied upon the property under an execution in favor of a firm judgment creditor, the evidence as to value of the property transferred was conflicting, there being evidence tending to show, and from which the jury would have been authorized to find, that such value was not more than the claim of the transferee against the firm, and, that the object of S. in transferring his interest, was that the property should be used to pay the firm debt, *held,* the fact that the individual debts were named as part of the consideration, was not conclusive evidence of fraud; that the question of fraud in the transfer was one of fact for the jury; and that, therefore, a direction of a verdict for defendant was error.

Reported below, 53 Hun, 239.

(Argued January 29, 1890; decided February 25, 1890.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, entered upon an order made July 6, 1889, which reversed a judgment in favor of plaintiff entered upon a verdict directed by the court and granted a new trial.

This was an action of replevin.

The goods in question were levied upon by the sheriff under and by the virtue of an execution issued against John Sherlock and John Bulger, the individual members of the firm of Bulger & Sherlock, upon judgments recovered on firm liabilities. Plaintiff claimed title under a bill of sale executed by Bulger.

The further material facts are stated in the opinion.

*Nathaniel C. Moak* for appellant. The determination of the General Term was erroneous, as matter of law, and should be reversed by this court. (*Sands* v. *Crooke,* 46 N. Y. 568; *Dickson* v. *Broadway,* 47 id. 509; *Courtney* v. *Baker,* 60 id. 7; *Downing* v. *Kelly,* 48 id. 437, 438; *Harris* v. *Burdett,* 73 id. 140, 141; *Bronk* v. *New York,* 95 id. 656; *Pharis* v.

*Gere*, 107 id. 233 ; *Wright* v. *Hunter*, 46 id. 409, 412.) It is the duty of the court to nonsuit the plaintiff, or to direct a verdict in his favor, where it would be the duty of the court  to set aside a verdict, as against evidence, if one were found for the plaintiff. (*Dwight* v. *G. Ins. Co.*, 103 N. Y. 341, 358, 360 ; *Stewart* v. *Lansing*, 104 U. S. 505, 512 ; *Pleasants* v. *Fant*, 22 Wall. 116 ; *Bagley* v. *Bowe*, 105 N. Y. 171, 179.) The question of fraudulent intent must be deemed a question of fact and not one of law. (2 R. S. 137, § 4 ; 2 Edm. Stat. 142 ; *Cunningham* v. *Freeborn*, 3 Paige, 557 ; *Edgell* v. *Hart*, 9 N. Y. 213, 218 ; *Reynolds* v. *Ellis*, 103 id. 124, 125 ; *Ford* v. *Williams*, 24 id. 364 ; *Davis* v. *Briggs*, 52 Hun, 614 ; *Coleman* v. *Burr*, 93 N. Y. 18, 31, 32 ; *Tifft* v. *Barton*, 4 Den. 171, 174, 175 ; *McCarthy* v. *McDermott*, 10 Daly, 450 ; *Stevens* v. *Fisher*, 19 Wend. 181, 184, 186 ; *Randall* v. *Parker*, 3 Sandf. 69, 78 ; *Einstein* v. *Chapman*, 10 J. & S. 144 ; *Rothschild* v. *Salomon*, 52 Hun, 486 ; Bump on Fraud. Cont. 24.) Where part of the consideration of a contract of transfer is illegal, the entire transfer is tainted with the illegality and must fall. (1 Whart. on Cont. § 509 ; *Perkins* v. *Cummings*, 2 Gray, 258 ; *Widor* v. *Webb*, 20 Ohio St. 431 ; *Foley* v. *Speir*, 100 N. Y. 552, 557, 558 ; *Saratoya* v. *King*, 44 id. 87 ; *Pepper* v. *Haight*, 20 Barb. 429, 437 ; *Irvine* v. *Stone*, 6 Cush. 508 ; *Chaler* v. *Beckett*, 7 T. R. 201 ; *Snyder* v. *Willey*, 33 Mich. 495 ; *Barton* v. *Port Jackson*, 17 Barb. 397, 406. 407 ; *Rose* v. *Truax*, 21 id. 361 ; Wait on Fraud. Convey. § 434 ; Bump on Fraud. Con. 364.) The transfer by Sherlock to John Bulger, his partner, and the transfer by John Bulger to the plaintiff, were, on the undisputed facts, legally fraudulent and void as to the firm creditors of Sherlock & Bulger. (Bump on Fraud. Con. 229, 230 ; *Burtus* v. *Tisdall*, 4 Barb. 571 ; *Anderson* v. *Maltby*, 2 Ves. Jr. 244 ; *Elliot* v. *Stevens*, 38 N. H. 311 ; *Ferson* v. *Monroe*, 21 id. 462 ; *Geortner* v. *Canajoharie*, 2 Barb. 625 ; *Walsh* v. *Kelley*, 42 id. 98 ; 27 How. Pr. 359 ; *Wilson* v. *Robertson*, 21 N. Y. 587 ; 19 How. Pr. 350 ; *Hartley* v. *White*, 94 Penn. St. 31 ; *Ex parte Mayon*, 4 DeG., J. & S. 664 ; 1 Bates on Part. § 562 ;

*In re Cohn,* 26 U. C. C. P. 308 ; *Kelly* v. *Scott,* 49 N. Y. 595 ; *Gorham* v. *Innis,* 115 id. 87, 92, 93 ; *Arnold* v. *Hager-man,* 17 Atl. Rep. 93 ; *Collier* v. *Hanna,* Id. 390 ; *Haston* v. *Castner,* 31 N. J. Eq. 697 ; *Hulbert* v. *Dean,* 2 Keyes, 97 ; 2 Abb. Ct. App. Dec. 428 ; *Goodbar* v. *Cary,* 16 Fed. Rep. 316, 320 ; 47 Hun, 638 ; *Ransom* v. *Van Deventer,* 41 Barb. 307 ; *Leslie* v. *Rugg,* 4 Hun, 410 ; 64 How. Pr. 366 ; *Menagh* v. *Whitwell,* 52 N. Y. 146 ; 49 Hun, 610 ; *Calkin* v. *Conner,* 31 Hun, 44 ; *Heye* v. *Bolles,* 2 Daly, 231 ; 33 How. Pr. 266 ; *In re Cooke,* 3 Biss. 122 ; *Ferson* v. *Monroe,* 21 N. H. 462 ; 82 Ala. 169 ; *Pratt* v. *Foote,* 9 N. Y. 463, 468 ; 10 id. 601 ; *Beach* v. *Smith,* 30 id. 131, 132 ; *Wright* v. *Van Nostrand,* 21 J. & S. 381 ; 103 N. Y. 688 ; *Pattison* v. *Guardian,* 1 H. & N. 523.) The prevailing opinion of the court below is not well founded. (*French* v. *Carhart,* 1 N. Y. 102 ; *Barney* v. *Worthington,* 37 id. 115.) Plaintiff was not entitled to recover for the few articles purchased between June eighteen and June twenty-one, the time of the levy, with the proceeds of sales of some of the firm property. (*La Comite* v. *Standard Bank,* 1 C. & E. 87 ; *Berghoff* v. *McDonald,* 87 Ind. 550 ; *Davis* v. *Marx,* 55 Miss. 376 ; *Astor* v. *Miller,* 2 Paige, 68 ; *Stearns* v. *Herrick,* 132 Mass. 114 ; *Nash* v. *Farrington,* 4 Allen, 157 ; *Clapp* v. *Thomas,* 5 id. 158 ; *Duer* v. *Kelly,* 68 Ala. 192 ; *M., etc., Co.* v. *McLoughlin,* 1 McCrary, 258.) The trial court committed no error in holding, that as the evidence stood there was then no sufficient evidence of any transfer to plaintiff of the property. (*Fisher* v. *Herone,* 22 Neb. 365 ; 34 N. W. Rep. 365 ; *Frey* v. *Gessley,* 11 Cent. Rep. 655 ; *U. S.* v. *Denver, etc.,* 2 R. & C. L. J. 425, 427 ; 31 Fed. Rep. 886, 890 ; 1 Whart. on Ev. [3d ed.] § 367 ; 1 Greenl. on Ev. § 79 ; 3 Am. Rep. 166, 181 ; *Edwards* v. *Lamont,* 47 Hun, 472, 473 ; 21 N. E. Rep. 415 ; *Dean* v. *Anderson,* 34 N. J. Eq. 496 ; *Moore* v. *M. Bank,* 55 N. Y. 41, 50 ; *Fairbanks* v. *Under-wood,* 9 E. Rep. 213, 214 ; *Stevens* v. *Brennan,* 79 N. Y. 254 ; *Mather* v. *Freelove,* 25 Wkly. Dig. 343 ; *Weaver* v. *Barden,* 49 N. Y. 286 ; *Jewett* v. *Palmer,* 7 Johns. Ch. 65, 68 ; Moak's Van Santvoord's Pl. 394, 564 ; *Gerrit* v. *Davenport,* 66 Barb.

412; 56 N. Y. 676; *Metter* v. *Gamble*, 4 Barb. 146; *Small* v. *Smith*, 1 Den. 583; *D. S. M. Co.* v. *Best*, 105 N. Y. 64; *Seymour* v. *McKinstry*, 106 N. Y. 230; *N. Bank* v. *Kidder*, 106 id. 121; *Thompson* v. *S. N. N. Bank*, 15 N. Y. S. R. 110, 113; *Simpson* v. *Del Hoyo*, 94 N. Y. 189, 194, 195; *Boone* v. *Chiles*, 10 Pet. 211; *In re R. I. Co.*, 83 Va. 397; *Weber* v. *Rothschild*, 15 Oregon, 385.)

*Matthew Hale* for respondent. The trial court erred. in directing a verdict for the defendant and in refusing to submit the questions in the case to the jury. (*Dimond* v. *Hazard*, 32 N. Y. 65; *Sage* v. *Chollar*, 21 Barb. 596; *Stanton* v. *Westover*, 101 N. Y. 265; *Williams* v. *Whedon*, 109 id. 333; *Crane* v. *Rosa*, 40 Hun. 455; 2 R. S. 137, § 4; *Campbell* v. *Woodworth*, 20 N. Y. 499; *Gray* v. *Walton*, 107 id. 254, 259; *Bagley* v. *Bowe*, 105 id. 171, 179; 6 N. Y. S. R. 842, 845; *Powers* v. *Siberstein*, 108 N. Y. 169, 171, 172; *Bent* v. *Bent*, 19 N. Y. S. R. 30; *Vial* v. *Mathewson*, 34 Hun, 70; *Griffin* v. *Cranston*, 1 Bosw. 281; 10 id. 1; *Crook* v. *Rindskopf*, 105 N. Y. 476, 488; *Bogert* v. *Haight*, 9 Paige, 297; *Turner* v. *Jaycox*, 40 N. Y. 470, 475, 476.) If there was any evidence of fraudulent intent in the case, it should have been submitted to the jury. (*Shultz* v. *Hoagland*, 85 N. Y. 464; 2 R. S. 137, § 4; *Griffin* v. *Cranston*, 1 Bosw. 281; 10 id. 1; *Vance* v. *Phillips*, 6 Hill, 433; *Livermore* v. *Northrup*, 44 N. Y. 107, 110, 111; *Bagley* v. *Bowe*, 105 id. 254, 259; Id. 179, 180; *Powers* v. *Silberstein*, 108 id. 169, 171, 172.) The answer is not sufficient to raise any question of fraudulent intent (*Klinger* v. *Bondy*, 36 Hun, 601.)

ANDREWS, J. The trial judge directed a verdict for the defendant, and the General Term has granted a new trial on the ground that the question of fraud in the sale from John Bulger to the plaintiff, of the goods, personal property and real estate, which formerly belonged to the firm of Bulger & Sherlock, should have been submitted to the jury. The

general rule is well settled, that in a jury case the direction of a verdict is only justified where the evidence conclusively establishes the right of the party in whose favor the direction is given. The test of the right to direct a verdict is whether the court would be bound to set a verdict aside as against evidence, if rendered against the party in whose favor it was directed. If this would be the duty of the court, the judge need not await the verdict before acting, but in advance may rule the question as one of law. But as verdicts cannot be found on mere conjecture, neither will a shadow or possibility, nor a mere scintilla stand in the way of ruling the case in favor of the party who shows a substantial right, of which there is no substantial contradiction. (*Dwight* v. *Germania Life Ins. Co.*, 103 N. Y. 341 ; *Bagley* v. *Bowe*, 105 id. 171.) The statute relating to fraudulent transfers and conveyances, which declares that the question of fraudulent intent arising thereunder shall be deemed a question of fact and not of law (2 R. S. 137, § 4), does not, as now interpreted, interfere with the prerogative of the court to direct a verdict, provided the fraudulent intent is conclusively established on the face of the instrument of transfer, or by the uncontradicted verbal evidence. *Edgell* v. *Hart*, 9 N. Y. 213; *Ford* v. *Williams*, 24 id. 359.) The defendant's counsel has presented a very learned and able argument in support of the view that the uncontradicted evidence established that the transactions resulting in the transfer to the plaintiff of the property of the firm of Bulger & Sherlock were fraudulent as against the firm creditors. The point here is, should this question have been submitted to the jury? The alleged fraud consists, as is claimed, in a scheme between the plaintiff and Bulger and Sherlock, by which Sherlock was to transfer his interest in the firm assets to his copartner John Bulger, so as to enable the latter to transfer them to the plaintiff in payment of debts held by the latter against the firm and also against John Bulger individually. It is undisputed that when these transactions took place both the firm and the individual members were insolvent, and that this was known to all the parties.

There can be no controversy as to the rule of law governing the relations between an insolvent firm and its creditors, and their mutual rights in respect of the firm property. The partnership as such has its own property and its own creditors, as distinct from the individual property of its members and their individual creditors. The firm creditors are preferentially entitled to be paid out of the firm assets. Whatever may be the true foundation of the equity, it is now an undisputed element in the security of the firm creditors. The insolvent firm cannot apply the firm assets in payment of the individual debts of the partners, nor can the equity of the firm creditors be defeated by an attempted conversion of the assets of the firm into the individual assets of one of the partners through a transfer by one partner of his interest therein to the other. In either of the cases supposed, they would remain, as to the firm creditors, firm assets, which could be followed and taken on execution by the firm creditors, until they had come to the hands of a *bona fide* purchaser, and where an individual creditor of one of the members of an insolvent firm, knowing of such insolvency, takes a transfer of firm property in payment of his individual debt, his act is not merely a violation of an equitable right of the firm creditors, but it constitutes a fraud under the statute of Elizabeth. The law regards it as a voluntary transfer made to hinder, delay and defraud the firm creditors, and as to them is void. These general principles are established by many cases, but it is sufficient to refer to a few of them. (*Wilson* v. *Robertson*, 21 N. Y. 587; *Menagh* v. *Whitwell*, 52 id. 146; *Ex parte Mayon*, 4 DeG., J. & S. 664.)

The case shows that Sherlock, one of the firm of Bulger & Sherlock, on the 15th day of June, 1883, by instruments in writing, assigned, transferred and conveyed to his copartner, John Bulger, all of the firm assets, including the stock in the grocery, book accounts, horse, wagon and harness, and the lot and the store thereon, in which the firm business was conducted, and that on the next day (June sixteenth), John Bulger transferred and assigned the same property to the plaintiff,

his brother. The plaintiff, at the time of the transfer to him, held debts against the firm to at least the amount of $1,750, and the validity of the debt is not disputed. He also held, as assignee of his mother, a debt against John Bulger, individually, of about $1,100. The value of the firm property transferred by Sherlock to John Bulger, and by the latter to the plaintiff, is the subject of some conflict and uncertainty in the evidence. There is evidence from which the jury would, we think, have been authorized to find that the value, above incumbrances, did not exceed the firm debt owing to the plaintiff. There was evidence given on the part of the defendant which would make the value considerably more. The bill of sale of the personal property from Sherlock to John Bulger states that it is "subject to the payment in full of all claims of every name and nature now in existence against said firm of Sherlock & Bulger, which said claims and demands the said John Bulger does hereby agree and assume to pay." The bill of sale from John Bulger to the plaintiff was not produced, it having been burned in the burning of the store about two years after the transaction, with other papers of John Bulger. The plaintiff was examined as to the consideration of the transfer to him by John Bulger of the firm property, and he testified in substance that it was the cancellation of his debt against the firm and the surrender of John Bulger's individual notes of $1,100, given to his mother.

It is insisted that the transfer by Sherlock to John Bulger of his interest in the firm property, was itself fraudulent, first, because it was an attempt to change the character of the property from firm property to the individual property of John Bulger; and, second, because it was a part of the scheme to pay John Bulger's individual debt to the plaintiff out of the firm assets. Both of these claims may perhaps be true, but the alleged fraudulent intent on the part of Sherlock is not an inference of law from the evidence, although a jury might be justified in finding the fact. The bill of sale executed by Sherlock does not show on its face an intent to divert the property

from the firm creditors. The transfer is expressly made sub-
ject to the firm debts, thereby preserving, instead of defeating
the rights of the firm creditors. There is no doubt upon the
extrinsic facts proved that Sherlock understood that John Bul-
ger would immediately transfer the property to the plaintiff.
The defendant's counsel insists that he knew it was to be turned
out to pay his individual debt as well as the firm debt. The
defendant's counsel on the trial pressed John Bulger to state
the object of Sherlock, and the witness testified : " Well the
principal object was owing to the fact that I had accused him
on several different occasions as acting as though he wished
to see Jerry (plaintiff) lose the money that he had invested ;
so finally he said he would sell out the whole concern to me, in
order that I might pay Jerry. He stated further that he was
satisfied, and wanted to pay Jerry, as he knew Jerry had
loaned his hard-earned money." The jury might have found
from this that Sherlock's object in transferring the property
was, that it should be used to pay the firm debt to the plaintiff,
and not the individual debt of John Bulger. It was for the jury
to interpret the transaction in the light of all the circumstances.
The subsequent transaction between John Bulger and the
plaintiff, if it necessarily implies a transfer by the former to
the latter of the firm property to pay John Bulger's individual
debt, the transfer would be void. If, however, the jury might
have believed that the firm debt held by the plaintiff was equal
to, or substantially equal to, the value of the property trans-
ferred, and that the individual claims against John Bulger,
held by the plaintiff, were given up as an inducement to John
Bulger to pay the firm debt by a transfer of the property, the
mere fact that the individual claims were named as a part of
the consideration, would not, I think, be conclusive evidence
of fraud, or necessarily subvert a transaction which, except
for that incident, might be found to be valid. The firm,
although insolvent, had a right to make preference among its
creditors, and one partner may transfer the partnership effects
directly to a creditor of the firm in payment of a debt without
the knowledge or consent of his copartner. (*Mabbett* v. *White*,

12 N. Y. 442.) The case upon the evidence is far from being a clear one for the plaintiff. But there is but little, if any, ground to charge him with designed fraud or moral turpitude. His debt is not disputed. The personal property on the sale by the defendant brought but $945. The facts did not, we think, conclusively establish a case from which fraud is imputed in law, and we concur in the opinion of the General Term that the verdict was erroneously directed.

The order should be affirmed and judgment absolute ordered for the plaintiff on the stipulation.

All concur.

Order affirmed and judgment accordingly.