ILLSTON v. EVANS et al.

(Supreme Court, Appellate Division, Third Department. March 2, 1898.)

1. DIRECTING VERDICT—CONFLICTING EVIDENCE.
    Evidence for plaintiff in an action against a wife for ice sold to her husband, who was conducting a boarding house, showed that the lease was taken in the wife's name, that the furniture therein was hers, and that she had made admissions tending to show that she was the proprietor of the business. The evidence of the husband and defendant showed that the business was that of the husband, and that when the ice was sold she was running a boarding house on another street. The ice was charged to the husband on plaintiff's books, and the bills were made out to him. *Held*, that it was error to direct a verdict in favor of plaintiff.

2. PRINCIPAL AND AGENT—PRESUMPTIONS.
    The rule that one who deals with an agent in a matter within his authority has a right to assume in subsequent dealings with him, unless otherwise informed, that the agency continues, does not apply where the agent of an undisclosed principal afterwards embarks in a new enterprise in his own name; the fact that he ever was an agent being unknown to the party with whom he had dealt.

3. SAME—UNDISCLOSED PRINCIPAL.
    A sale to an agent of an undisclosed principal, without knowledge of the agency by the vendor, who attempts to hold the principal for a later sale to the agent acting in a different business on his own account, is not within the rule that one who has had dealings with a firm without knowing the names of its members can hold a partner, who has retired, responsible on account of subsequent dealings with the firm, unless he has received actual notice of such retirement.

Appeal from Tompkins county court.

Action by Fred E. Illston against Letitia Evans and another. From a judgment for plaintiff, defendant Letitia Evans appealed to the county court of Tompkins county, where a new trial was had. From a judgment directing a verdict for plaintiff, defendant Letitia Evans appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Tompkins & Cobb (M. N. Tompkins, of counsel), for appellant.
Randolph Horton, for respondent.

PUTNAM, J. This action was brought in a justice's court against the appellant, Letitia Evans, and her husband, DeForest J. Evans, to recover for a quantity of ice alleged to have been sold them by the plaintiff at the Cascadilla Building, in the city of Ithaca, in the summer of 1895. A judgment was obtained in favor of the plaintiff, and the defendant Letitia Evans appealed to the county court of Tompkins county, where a new trial was had. On such new trial the county judge directed a verdict in favor of the plaintiff, and judgment was thereupon entered in his favor against the defendant Letitia Evans, from which she has taken an appeal to this court.

It was shown on the trial that prior to the delivery of the ice in question by the plaintiff at the Cascadilla Building the defendant Letitia Evans, being the owner of a house on Stewart avenue, in the city of Ithaca, had conducted therein on her own account the business of taking lodgers and boarders. The plaintiff had furnished ice to

her at said place, but had charged the same, and given credit therefor, to her husband, who was acting as her agent, the plaintiff at the time being unaware that the business was in fact that of the appellant. When the new business was started in the Cascadilla Building in the summer of 1895 by the defendants, or one of them, he also charged the ice there delivered to DeForest J. Evans, and was not informed that the party who carried on the business at that place was not the one who conducted the boarding house on Stewart avenue.

Had this case been submitted to the jury, we are disposed to think that the evidence would have sustained a finding that the appellant was the party who carried on the business at the Cascadilla Building at the time in question. The lease was taken in her name; the furniture therein, or the greater part thereof, was owned by her; and certain declarations and admissions on her part were proved, all tending to show that she was the proprietor of the business there carried on. But there was other evidence in the case tending to show a contrary state of facts, sufficient to authorize a finding by the jury in favor of the appellant. Both of the defendants testified on the trial that the business at Cascadilla place was in fact that of the husband; that the appellant had no interest whatever therein; that while that business was being conducted she was engaged with her own business at her house on Stewart avenue. DeForest J. Evans testified that the ice was contracted by him of the plaintiff in his own name. It was shown that it was charged to DeForest J. Evans on plaintiff's books, and the bills therefor, made out by the plaintiff against DeForest J. Evans, were introduced in evidence on the trial. We think that on the evidence the court was not authorized to direct a verdict, but should have submitted the questions of fact in the case to the jury. A verdict can only be directed where the evidence is undisputed, or so certain and convincing that a reasonable man could come to but one conclusion. "If there is ground for opposite inferences, and a conclusion either way would not shock the sense of a reasonable man, then the case is for the jury, although the judge may entertain a clear and decided conviction that the truth is on this or that side of the controversy." Bagley v. Bowe, 105 N. Y. 171–179, 11 N. E. 386; Bulger v. Rosa, 119 N. Y. 459, 24 N. E. 853.

We do not deem it necessary, and will not undertake, to recapitulate the testimony. It is sufficient to say that under the doctrine stated in the above cited and kindred authorities, it raised a question of fact which should have been submitted to the jury.

The learned counsel for the respondent urges that the plaintiff, immediately prior to the sale of the ice in question, had been dealing with the appellant, although as an undisclosed principal, at her house on Stewart avenue, and was not informed that the business at the Cascadilla House was not carried on by the same person who was the proprietor of the boarding house on Stewart avenue; that there was no conflict of the testimony in this regard; and that hence the direction of a verdict was proper. The answer to this position is that the business carried on at the Cascadilla Building was a new, distinct, and different enterprise from that conducted at Stewart avenue. It was not a continuation of the same business that was and had

been carried on at the latter place, and from the testimony the jury could have found that this new and different business conducted at the Cascadilla Building was carried on by DeForrest J. Evans on his own account, and that he contracted the ice in question of the plaintiff in his own name. Again, the ice furnished at the appellant's house on Stewart avenue was not sold on her credit, but on that of her husband. She was an undisclosed principal, and the plaintiff was not aware of the agency of DeForest J. Evans; hence the plaintiff did not afterwards deliver the ice in question at Cascadilla place on the credit of the appellant, but on that of her husband. He intended to and did sell the ice to the latter on his credit. The doctrine that one who has dealt with an agent in a matter within his authority has a right to assume in subsequent dealings with him, unless otherwise informed, that the agency continues, cannot be held to apply to a case where the agent of an undisclosed principal afterwards embarks in a new enterprise in his own name, the fact that he ever was an agent being unknown to the party with whom he deals.

Counsel for the respondent calls our attention to authorities holding that one who has had dealings with a co-partnership without being aware of the names of its members can hold one of the partners who has retired from the firm responsible on account of dealings with the firm subsequent to such retirement, unless he has received actual notice thereof. Rolling-Mill Co. v. Harris, 124 N. Y. 280, 26 N. E. 541; Howell v. Adams, 68 N. Y. 314. We think the doctrine established in those authorities is not applicable to the case under consideration. One dealing with a co-partnership may not know the names of its members, but he knows the name of the firm,—the party with whom he is dealing. He may consult a mercantile agency, or seek in other ways information as to the standing and credit of the firm, while not knowing the names of its members. In dealing with the firm he relies upon the responsibility of the unknown and undisclosed members thereof. See Rolling-Mill Co. v. Harris, 124 N. Y. 292, 293, 26 N. E. 54. Hence a necessity, in case of a change in the constitution of the co-partnership by the retirement of one of the partners, of giving notice to one who has been dealing with it. Such person had in fact dealt with the firm on the credit of the retiring as well as the other partners, although unknown to him. There is a clear distinction between the facts considered in the authorities referred to and those appearing in this case. One dealing with a co-partnership, although unaware of the names of its members, relies upon the responsibility of the principal with whom he deals,—the several persons conducting business as a firm under a co-partnership name which he knows, although he may not know the individual names of the members; and he is entitled, in subsequent dealings with the firm, to notice of the retirement of a member, on whose responsibility in former dealings he has necessarily relied. But in the case under consideration, prior to the sale of the ice in question, the plaintiff did not know that the appellant's husband ever acted as her agent in any business carried on at the house on Stewart avenue or elsewhere. He did not know the appellant in any of his dealings with her husband. In selling the ice in question, which, as a matter

of fact, the jury could have found from the testimony was sold to DeForest J. Evans, he did not rely upon her responsibility. He did not charge it to her, and he sold it relying upon the credit of her husband.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur.